IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIANNE KHALIL, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 20-5665 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    September 3, 2021

Marianne Khalil, ("Plaintiff"), seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), which denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff's request for review is denied.

**I.     PROCEDURAL HISTORY**[1]

On August 13, 2018, Plaintiff applied for DIB, alleging disability that began October 22, 2015, because of physical and mental health problems. R. 15. After Plaintiff's application was denied, she requested an administrative hearing. *Id.* Administrative law judge Kathleen McDade ("the ALJ") held a hearing, on January 30, 2020; Plaintiff, represented by an attorney, and vocational expert Denise D. Cordes ("the VE") testified at the hearing. R. 37-63. Applying the

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

sequential review process for disability,[2] the ALJ rendered an unfavorable decision, on March 12, 2020. *Id.* at 15-30. The Appeals Council declined to review Plaintiff's case, on October 9, 2020. *Id.* at 1-3. Next, Plaintiff requested judicial review; the parties have consented to this Magistrate Judge's jurisdiction, pursuant to 28 U.S.C. § 636(c).

## I.     FACTUAL BACKGROUND

A.     <u>Personal History</u>

Plaintiff, born on July 15, 1974, R. 41-42, was 45 years old on the date she was last insured. R. 28. She is nurse who last worked in October 2015, when she was fired from her employment. R. 43. Plaintiff lives with her husband, a school bus driver who works from 6:00 a.m. to 9:00 a.m. and 1:00 p.m. to 4:00 p.m., and their three-year-old daughter. R. 42.

B.     <u>Plaintiff's Testimony</u>

At the January 30, 2020 administrative hearing, Plaintiff testified about her mental and physical impairments. Plaintiff was diagnosed with ADHD in 2000 and bipolar disorder in 2014.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

R. 44. She was diagnosed with fibromyalgia in 2004. R. 46. Plaintiff was able to work for a number of years, despite her ADHD and fibromyalgia, because her prescribed medications allowed her to concentrate sufficiently with the minimum stamina necessary to complete a workday. R. 44-46. However, after she was fired from a nursing job in 2011, Plaintiff did not work from 2012-2014 because her weight increased, which worsened her depression and stamina problems. R. 54. She worked again in 2015, but had trouble performing her job duties properly and was fired in October 2015. R. 54.

Once Plaintiff's daughter was born in 2016, her fibromyalgia worsened; she was more fatigued and had difficulty raising her arms. R. 45. Although the fibromyalgia medication usually reduces Plaintiff's pain for approximately six hours, flare-ups occur which can last for two to four hours, approximately three times a week. R. 47-48.

Plaintiff estimated that she could lift only five to ten pounds for a second or two. R. 48. Because of her weakness and inability to lift her daughter, Plaintiff's daughter has learned to put herself in her child seat. R. 48. After Plaintiff had bariatric surgery in June 2019, she lost weight. R. 49. However, that loss has not improved her pain or weakness.[3] R. 49.

On a typical morning, Plaintiff has difficulty getting out of bed, because of fatigue, weakness and back pain. R. 55. After taking her medication, Plaintiff offers her daughter cereal for breakfast and sits to rest while her daughter is eating. R. 55. She then helps her daughter dress for preschool, but has trouble deciding which outfits her daughter should wear. R. 55. After Plaintiff takes her daughter to school, she usually lacks energy to perform any chores at home. R. 55. After school, Plaintiff may take her daughter to the playground; she relies on friends to watch her daughter, because she is not able to keep up with her. R. 55-56. Plaintiff admitted that her

---

[3] Plaintiff notes that, despite losing 57 pounds since undergoing bariatric surgery, she remained obese at the time of the administrative hearing. Pl. Br. at 13.

husband helps a great deal with their daughter, because his work schedule allows him to be home much of the time. R. 56. He usually prepares dinner and helps put their daughter to bed. R. 56. Once their daughter falls asleep, Plaintiff retires. R. 56.

C.     <u>Vocational Testimony</u>

The VE categorized Plaintiff's past nursing positions as skilled[4] jobs, performed at the light[5] to very heavy[6] level of exertion. R. 57. The ALJ asked the VE to consider a person of Plaintiff's age, education and work experience; who was able to perform sedentary[7] work, limited to simple, routine tasks with simple judgment and decision-making; the work should involve few work place changes, so that the work duties can be performed at the same station or location and during the same hours every day; the work should be low stress, meaning that any work criteria could be completed by the end of the shift; the work should involve no contact with the public and only occasional contact with coworkers and supervisors. R. 57-58. The VE stated that, although this individual could not perform any of Plaintiff's past work, they could perform several unskilled[8] jobs: (1) pharmaceutical packager (26,000 positions in the national economy); (2) optical goods assembler (36,000 positions in the national economy); and (3) weight tester (31,000 positions in the national economy). R. 58.

Plaintiff's attorney asked the VE to consider limitations found by several medical sources.

---

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. … Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).
[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).
[6] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(e).
[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).
[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

First, the VE was asked to consider limitations found by Dr. Nicole Chiappetta, Plaintiff's treating rheumatologist. R. 59. Those limitations included pain frequently interfering with attention and concentration; being off-task 20% of the day and absent from work four times per month; able to lift 10 pounds occasionally and 20 pounds rarely; able to sit for 6 hours and stand for two hours per workday; needing to sit and stand at will, with 10 minute breaks every hour; occasionally able to look up, down and turn the head from side to side. R. 60. The VE responded that this person could perform no work. R. 60.

Next, the VE was asked to consider limitations rendered by Dr. Tiffany Chit, Plaintiff's primary care physician. R. 60. Her limitations included ability to sit only two hours per day, with the legs elevated to heart level for one to two hours; need for unscheduled breaks every hour; being off-task 25% of the time and four days' absence from work per month. R. 60-61. The VE responded that a person with these limitations could not perform any work. R. 61. Finally, if the limitations found by Dr. Tania Martinez Jimenez, Plaintiff's treating psychiatrist, (*i.e.*, that Plaintiff would be off-task more than 15% of the time and miss 4-6 days of work each month, R. 1114) were accepted, the VE opined the person could not perform any work. R. 61.

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2019.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of October 22, 2015 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq*).

3. Through the date last insured, [Plaintiff] had the following severe impairments: attention deficit hyperactivity disorder (ADHD), dipolar disorder, major depressive disorder, anxiety disorder, and fibromyalgia (20 CFR 404.1520(c)).

5

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, though the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to simple, routine tasks; to simple judgment and decision making; to work that involves few workplace changes and is the low end of the stress spectrum which I define as being able to perform the same duties at the same station or location and during the same hours from day to day and where any production criteria can be made up by the end of the workday shift; and no contact with the general public and occasional contact with coworkers and supervisors.

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on July 15, 1974 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569, 404.1569(a)).

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, from October 22, 2015, the alleged onset date, through December 31, 2019, the date last insured (20 CFR

404.1520(g)).

R. 17-18, 20, 28-29.

## IV.   DISCUSSION

A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any

medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential analysis process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other unskilled, sedentary jobs that exist in the national economy and, hence, was not disabled. R. 15-30.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by:  (1) finding that Plaintiff's obesity was not severe; (2) rendering a residual functional capacity ("RFC") assessment that lacks substantial evidence to support it; and (3) posing a flawed hypothetical question to the VE.  Pl. Br. at 16-28.  The Commissioner denies Plaintiff's assertions, maintaining that the ALJ's decision is supported by

substantial evidence. Resp. at 1-2. This court finds that the ALJ's non-disability decision is supported by substantial evidence.

1. <u>The ALJ did not Commit Reversible Error by Finding that Plaintiff's Obesity was not a Severe Impairment</u>

Plaintiff argues that the ALJ erred by finding that her obesity was not a severe impairment at step two of the sequential evaluation process ("SEP").[9] Pl. Br. at 9-14. The court concludes that any step two error regarding Plaintiff's obesity was harmless.

In her decision, the ALJ explained why she found Plaintiff's obesity non-severe at step two of the SEP; moreover, she acknowledged that obesity could exacerbate the limitations resulting from Plaintiff's other medically supported impairments. R. 18 (citing Social Security Ruling 19-2p). The ALJ expressly stated that she was considering the impact obesity has on Plaintiff's other impairments when reaching her subsequent SEP conclusions. *Id.* Hence, any error the ALJ may have made by finding that Plaintiff's obesity was not severe at step two of the SEP would be harmless. *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007) (non-precedential).

2. <u>The ALJ's RFC Assessment is Supported by Substantial Evidence</u>

Plaintiff argues that the ALJ's RFC assessment lacks substantial evidence because she failed (a) to assess properly Plaintiff's subjective symptoms and (b) to resolve inconsistencies in the opinion evidence. Pl. Br. at 14-27. The court finds that, contrary to Plaintiff's assertions, the ALJ's RFC assessment is supported by substantial evidence.

a. <u>Plaintiff's Subjective Complaints</u>

With respect to Plaintiff's subjective symptoms, the ALJ stated that Plaintiff had impairments which could cause some of her alleged symptoms, but that Plaintiff's testimony about

---

[9] The SEP is found at 20 C.F.R. § 404.1520.

the intensity, persistence and limiting effects of her symptoms was not consistent with the objective medical evidence and other evidence in the record.  R. 21.  The ALJ went on to identify medical and other evidence which did not support Plaintiff's testimony.  R. 21-25.  For example, the ALJ cited:  the observations of Social Security personnel, R. 21; treatment notes revealing that Plaintiff's unexpected pregnancy caused a deterioration of her mental and physical condition, R. 22; treatment notes indicating that, after giving birth in 2016, many of Plaintiff's physical problems lessened, R. 22; treatment notes from 2017 to 2018 showing that, despite being obese and suffering from fibromyalgia, Plaintiff's physical and mental state was near normal, R. 22-23; treatment notes from 2018 to 2019 which generally revealed that Plaintiff's physical and mental conditions were stable on medication, R. 23-24; and Plaintiff's June 2019 bariatric surgery which resulted in weight reduction and some improvement in her conditions.[10]  R. 24-25.  In isolation, no piece of evidence the ALJ cited is substantial.  However, considered together, the evidence the ALJ cited does provide substantial evidence – which is only more than a mere scintilla, *Biestek*, 139 S. Ct. at 1154 – to support the ALJ's decision not to fully credit Plaintiff's subjective complaints.

      b.   The Opinion Evidence

    The ALJ also addressed all the opinion evidence Plaintiff cites:  the fibromyalgia medical source statement (Ex. 15F) prepared by Dr. Chit, Plaintiff's primary care physician, R. 25-26; the fibromyalgia medical source statement (Ex. 14F) prepared by Dr. Chiappetta, Plaintiff's treating rheumatologist, R. 26; the mental RFC assessment of Dr. Martinez Jimenez (Ex. 13F), Plaintiff's treating psychiatrist, R. 26-27; the opinions concerning Plaintiff's mental functioning of Dante Mancini, Ph.D. (Ex. 1A), the state agency psychological consultant, R. 27; and the opinions

---

[10] For example, the ALJ cited the treating rheumatologist's August 20, 2019 finding that Plaintiff had only 8 of 18 tender points, normal gait, full range of motion and intact strength.  R. 25 (citing Ex. 9F, p. 70).  The ALJ also cited a November 20, 2019 treatment note from Plaintiff's primary care physician which indicated that Plaintiff had no musculoskeletal complaints.  R. 25 (citing Ex. 8F).

concerning Plaintiff's physical capabilities of Michael Lombard, M.D. (Ex. 1A), the state agency medical consultant. R. 27. The ALJ's review of each doctor's opinions was thorough. With respect to treating doctors Chit and Chiappetta, the ALJ compared each doctor's treatment notes to the opinions she rendered and explained that the treatment notes did not support the extensive limitations contained in the opinions. R. 25-26. As to treating psychiatrist Dr. Martinez Jimenez, the ALJ explained that her opinions were only partially persuasive because Plaintiff's daily activities suggested that Plaintiff's mental functioning was higher than Dr. Martinez Jimenez opined. R. 26. Finally, with respect to the two state agency consultants, which the ALJ found persuasive, she explained that each doctor's opinions were supported by Plaintiff's treatment history, the objective medical evidence and Plaintiff's treatment history. R. 27.

Herein, the ALJ considered all relevant evidence when determining the weight she would accord to each doctor's opinions. As to each doctor, the ALJ provided a detailed explanation and cited to record evidence to support her conclusion. The record evidence the ALJ cited as to each doctor is more that a scintilla of evidence and would allow a reasonable person to conclude that the ALJ's assessment of each doctor's opinion is adequately supported. That is all that is required. *Biestek*, 139 S. Ct. at 1154. Hence, the weight the ALJ assigned to the opinion evidence is supported by substantial evidence.

3. <u>The ALJ's Hypothetical Question was Adequate</u>

Finally, Plaintiff argues that the ALJ erred because she failed to include being off-task approximately 20% of the time, as three doctors (Drs. Chit, Chiappetta and Martinez Jimenez) had opined, in the hypothetical question posed to the VE. Pl. Br. at 28. The court finds that the ALJ did not commit error in this regard.

For the VE's response to be considered substantial evidence, the hypothetical question

posed by the ALJ must include all of the claimant's credibly established impairments. *Rutherford*, 399 F.3d at 554 (citation omitted). Thus, any limitations alleged by the claimant that the ALJ properly discounts need not be included in the hypothetical question. *Id.* at 555. Herein, the court has explained that the ALJ's RFC determination is supported by substantial evidence and that the ALJ's decision not to fully credit the opinions of the three relevant doctors is supported by substantial evidence. *See supra* Section IV(C)(2)(b). Hence, the ALJ was not required to include the off-task restrictions she had properly rejected. *Rutherford*, 399 F.3d at 555.

      An implementing Order and Judgment Order follow.